UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
TASHAWN BURNS,

          Petitioner,

                                    MEMORANDUM AND ORDER
        -against-                        20-CR-0537(JS)

UNITED STATES OF AMERICA,

            Respondent.
-----------------------------------X
APPEARANCES
For Petitioner:     Tashawn Burns, <u>Pro se</u>
                   #92182-053
                   FCI Ray Brook
                   FEDERAL CORRECTIONAL INSTITUTION
                   P.O. Box 900
                   Ray Brook, New York  12977

For Respondent :   Mark Misorek, Esq.
                   Miranda Gonzalez, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza
                   Central Islip, New York  11722

SEYBERT, District Judge:

Presently before the Court is the <u>pro se</u> Section 2255 habeas petition of Tashawn Burns ("Petitioner" or "Burns"), seeking to vacate, set aside, or correct his sentence (hereafter, the "Petition"). (<u>See</u> Petition, ECF No. 140 at ECF pp.2-13; <u>see also</u> Support Memo, ECF No. 140 at ECF pp.14-30;[1] Reply, ECF No. 144.)  The Government opposes the Petition. (<u>See</u> Opp'n, ECF No.

---

[1]  When citing the Petition and Support Memo, the Court will use the internal page numbers on those documents.

143.[2])   For the following reasons, the Petition is **DENIED** in its entirety.

BACKGROUND

I.   The Underlying Crimes[3]

In the early morning of September 9, 2019, and together with his co-defendants, Petitioner Burns followed John Doe, John Doe's family members, and John Doe's driver, from a night club in Queens, New York, to the Doe residence in North Woodmere, New York, which is in Nassau County.  The intent was to rob the Doe party; once the Doe party pulled into the driveway of the Doe residence, Petitioner  and  Defendant  Jones  approached  the  party,  with Petitioner having drawn a handgun.  Petitioner proceeded to place the handgun directly to John Doe's head, telling John Doe that he would be killed if he did not comply with the robbers' demands. Petitioner and Defendant Jones subsequently robbed the Doe party members of: (1) a total of $3,200 in cash; (2) a $235,000 necklace; (3)  a  $3,000  handbag;  and  (4)  additional  jewelry  worth  $5,000 (hereafter,  collectively,  the  "Property").   Of  significance,  a portion of the stolen $3,200 was designated for payroll for John Doe's Queens-based restaurant business, which business used goods

---

[2] 2   When citing the Opposition, the Court will use its internal page numbers.

[3] Unless otherwise noted, the facts are drawn from the Superseding Indictment (see ECF No. 41) and the Presentence Investigation Report ("PSR") (see ECF No. 112 (sealed)).

obtained from other states and, in some instances, from other countries.  (See Standard Plea Form, ECF No. 102, at 5; see also Plea Hr'g Tr., ECF No. 136, at 13-14.)  After forcibly stealing the Property, Petitioner and Defendant Jones fled to a waiting car, parked close by and driven by Defendant Franco.

II.  Procedural History

   A.   The Indictments, Arraignment, Initial Plea

On November 21, 2020, a grand jury returned an indictment charging Defendant with Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. §§ 1951(a) and 3551 et seq. (Count One); substantive Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 3551 et seq. (Count Two); and, Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) (Count Three).  (See Indictment, ECF No. 1, ¶¶ 1-3.)  A superseding indictment was returned on December 14, 2021; it charged Defendant Franco with the same three counts; no new counts were brought against Petitioner.  (See Superseding Indictment, ¶¶ 1-3.)

On February 11, 2021, Petitioner was arrested and arraigned; he entered a plea of not guilty and was ordered detained pending trial.  (See Feb. 11, 2011 Min. Entry, ECF No. 18.) Attorney John F. Carman was appointed Petitioner's CJA Counsel. (See CJA Appt. Form, ECF No. 17.)

B.    The First Motion to Dismiss

On May 30, 2023, Petitioner moved to dismiss Count Three of the Superseding Indictment on the theory that Hobbs Act Robbery is not a Section 924(c) crime of violence (hereafter, the "First Dismissal Motion" or "FMTD").  (See ECF No. 80.)  The Government opposed the motion.  (See FMTD Opp'n, ECF No. 83.)  On August 7, 2023, the Court denied the First Dismissal Motion, since, pursuant to binding Second Circuit precedent, completed Hobbs Act Robbery is an act of violence for purposes of Section 924(c).  (See Memo & Order, ECF No. 84, at 8-9.)

C.    The Second Motion to Dismiss

Undeterred, on September 5, 2023 and facilitated by his counsel, Petitioner filed a pro se motion to dismiss the Superseding Indictment challenging the Court's jurisdiction on the basis that the stolen cash was not connected to interstate commerce (hereafter, the "Second Dismissal Motion" or "SMTD").  (See ECF No. 90.)  In his cover letter to the Second Dismissal Motion, defense counsel wrote he had "reviewed the motion and discussed the issue presented with [Petitioner]" and believed Petitioner had "crafted a thoughtful attack on the interstate commerce aspect of the substantive and Hobbs Act conspiracy charges in this indictment."  (Carmen Cover Ltr., ECF No. 90-1, attached to SMTD.)

Again, the Government opposed Petitioner's motion.  (See SMTD Opp'n, ECF No. 93.)  It argued Defendant's motion was

4

premature since whether the robbery of the cash affected interstate commerce was an element of 18 U.S.C. § 1951(a), and it had not yet presented evidence in support of that element for the jury to resolve. (See id. at 3.) Nonetheless, the Government provided a narrow preview of its evidence. (See id.)

On September 20, 2023, the Court issued its Memorandum & Order denying the Second Dismissal Motion (hereafter, the "September 2023 M&O"). (See ECF No. 100.) Finding the Government had not made a full proffer of evidence on the issue of the connection of the stolen cash to interstate commerce (see id. at 7-8), this Court limited its review to whether the Superseding Indictment was valid on its face; upon said review, the Court determined it was. (See id. at 9-10.)

D.   The Plea Agreement and Change-of-Plea Hearing

With trial having been scheduled to commence on October 10, 2023, and both of Petitioner's Dismissal Motions having been denied, on September 27, 2023 and pursuant to a plea agreement (hereafter, "Plea Agreement"), Petitioner entered a change-of-plea, pleading guilty to Counts Two and Three of the Superseding Indictment. (See Sept. 27, 2023 Min. Entry, ECF No. 101; see also Standard Plea Form, ECF No. 102, ¶25; Change-of-Plea Hr'g Tr., ECF No. 136.) As part of his Plea Agreement, Petitioner retained the right to appeal his conviction of Count Three premised upon his

contention that completed Hobbs Act robbery was not a crime of violence. (See Standard Plea Form ¶26.)

Just prior to the commencement of his September 27, 2023 change-of-plea hearing, Petitioner executed a Standard Plea Form, which defense counsel also signed. (See Standard Plea Form at 10; see also Change-of-Plea Hr'g Tr. at 11.) The Standard Plea Form included statements indicating Petitioner was clear-headed and understood the proceedings (see id. at ¶¶11-12; see also id. at ¶¶13-16, and 7-10), as well as that he was entering a guilty plea voluntarily and of his own free will, and not as the result of any force, threats, or promises (see id. at ¶¶47-49). Said Form also recorded, inter alia, Petitioner understood: the Government would have to prove beyond a reasonable doubt all elements of Counts Two and Three (see id. at ¶19); he had a right to proceed to a jury trial (see id. at ¶18); that by pleading guilty, he was giving up certain rights (see id. at ¶¶21-24); notwithstanding any agreement with the Government as to the applicable Sentencing Guidelines, said Guidelines were not binding on the Court and, instead, the Court was required to consider the Section 3553(a) Sentencing Factors in determining what sentence to impose (see id. at ¶¶37-39); and, if the sentence imposed was more severe than Petitioner expected, he was still bound by his guilty plea (see id. at ¶40). Moreover, via the Standard Plea Form, Petitioner confirmed he was

6

satisfied with Attorney Carmen's representation to date.  (See id. at ¶¶44-45.)

At the outset of the plea hearing, Petitioner was placed under oath.  (See Plea Hr'g Tr. 2-3.)  Once sworn, the Court determined, inter alia, Petitioner: was competent and clear-headed; had not consumed any drugs, alcohol or medications before the hearing; and, understood (1) he had an absolute right to go to trial, (2) at trial, it would be the Government's burden to prove Petitioner's guilt beyond a reasonable doubt, and (3) if he pled guilty, Petitioner would be waiving his constitutional right to trial, as well as other rights.  (See id. at 3-4.)  The Court also elicited from Petitioner: Petitioner's satisfaction with his defense counsel's representation; defense counsel had provided Petitioner with all the discovery in the case; and, defense counsel had thoroughly explained to Petitioner the rights he would be waiving by pleading guilty.  (See id. at 3-6.)

Continuing, via the Court's questioning, Petitioner confirmed his understanding of the maximum penalty he faced if he pled guilty to Counts Two and Three, as well as the Court's consideration of the Sentencing Guidelines and the Section 3553(a) Sentencing Factors in fashioning Petitioner's sentence.  (See id. at 4-7.)  The Court advised Petitioner that if the Government made an error in its Guidelines calculation, such miscalculation was not a basis for Petitioner to withdraw his guilty plea; Petitioner

7

confirmed his understanding of same. (See id. at 7.) Further, the Court informed Petitioner of his reserved limited right to appeal, with other bases to appeal being waived, except for claims of ineffective assistance of counsel. (See id. at 8-9.) Petitioner was also told the Plea Agreement was not binding upon the Court, to which Petitioner affirmed his understanding. (See id. at 10.) The Court confirmed with Petitioner that the Plea Agreement was the only promise he had with the Government. (See id. at 11.)

Thereafter, the Court heard Petitioner's factual allocution (see id. at 11-12). In particular, Petitioner allocated to: observing John Doe in a bar in Queens, New York, with cash and wearing expensive jewelry (see id.); deciding to rob John Doe using a gun Petitioner possessed (see id. at 12); actually robbing John Doe in Nassau County, New York (see id.); brandishing and pointing his gun at John Doe; and, the date of the robbery was September 9, 2019 (see id.).

Said allocution was followed by the Government's proffer of evidence it would offer if put to its burden (see id. at 13-14). More specifically, the Government stated, inter alia, it:

> would have called John Doe Number One, who would have testified that he was shown a photo array within a few days after the robbery, and law enforcement would say that the individual he picked out in the photo array as being the individual who brandished the firearm was, in fact, [Petitioner][, and]

8

*\*\**

> would have offered testimony from [John Doe], who would have testified that some of the money that he had on his person at the time he was robbed—which was taken—was slated as payroll money for employees of his restaurant, and that restaurant receives goods from out of state . . . which [it] would have proven affected interstate commerce.

(Id.)  Additionally, the Government would have offered testimony of a cooperating witness and a video recording which would corroborate the cooperating witness's testimony and identify Petitioner as the robber via his forearm tattoos visible in said video.  (See id. at 13.)

Thereafter, Petitioner's formally pled guilty to Counts Two and Three (see id. at 14.)  The Court found Petitioner's plea to be made knowing and voluntary and accepted it.  (See id.)

E.   Sentencing

On April 22, 2024, the Court sentenced Petitioner to consecutive terms of imprisonment of 36 months as to Count Two, a below-Guidelines sentence, and 84 months as to Count Three.  (See Sent'g Hr'g Tr., ECF No. 139; see also Apr. 22, 2024 Min. Entry, ECF No. 132; Judgment, ECF No. 133.)  As occurred at his plea hearing, at the commencement of his sentencing, Petitioner was placed under oath and asked by the Court whether he was satisfied with the services of his defense counsel.  (See Sent'g Hr'g Tr. 3.)  Although he initially equivocated, ultimately, Petitioner

reported he was satisfied with Attorney Carman's representation. (See id.)

Additionally, notwithstanding his representation at his plea hearing that, other than the Plea Agreement, he had not been made any promises, Petitioner belatedly tried to claim the Government had promised him, in exchange for his cooperation on another, unrelated case, it would not prosecute him for Hobbs Act Robbery. (See Sent'g Hr'g Tr. 28:9-13.) Controverting Petitioner's claim, asserting it was "100 percent inaccurate", the Government explained:

> We did go down to Texas to see him. He did sign a proffer agreement, and he did provide the Government with information. In exchange for that information, Mr. Burns wanted his robbery case to go away. The Government told him the robbery case would never go away, and then he indicated he refused to provide any further information.
> But he did provide information that was useful in that homicide, and we did speak about that and how it would affect this. But the Government never told him the case would go away. We told him the opposite; that this robbery case would never go away.

(Id. at 29:14-25.) The proffer meeting with Petitioner occurred while he was in Texas in federal custody in connection with an unrelated bank fraud offense. (See, e.g., PSR at 1, and ¶40.) The Court confirmed Petitioner was represented by counsel at that proffer meeting. (See id. at 30:1-4.) Unpersuaded by Petitioner's claim of a prior promise, which would have occurred before his

10

entering the Plea Agreement with the Government in this case (see, e.g., Sent'g Hr'g Tr. at 31), the Court proceeded to impose its sentence upon Petitioner.  In doing so, the Court considered, among other things, Petitioner's claim of having learned his lesson, as well as his prior criminal history and the disciplinary infractions he incurred while jailed.  The Court further considered the conditions Petitioner endured while housed at the Metropolitan Detention Center.  (See id. at 30-32.)

F.    Petitioner's Appeal

On May 3, 2024, Petitioner appealed his conviction.  (See Notice of Appeal, ECF No. 135.)  Defense counsel submitted a merits brief addressing whether, for purposes of Section 924(c), completed Hobbs Act robbery is a crime of violence.  See United States v. Burns, No. 24-1265-CR, Counseled Brief, Doc. No. 18.1, at 1 (2d Cir. Sept. 3, 2024).  Defense counsel argued the Second Circuit's Barrett case, which held substantive Hobbs Act robbery is a crime of violence for purposes of Section 924(c), was wrongly decided.  See id. at 5 (citing United States v. Barrett, 102 F.4th 60 (2d Cir. 2024)).  Instead, defense counsel asserted, completed Hobbs Act robbery can occur with a mere threat and not the use, attempted use, or threatened use of physical force; therefore, in such cases, like Petitioner's, a Section 924(c) conviction is not warranted.  See id. at 5-6.

11

Petitioner also submitted a pro se brief in support of his appeal, but arguing when he committed the robbery he had no specific intention to affect interstate or foreign commerce; indeed, he did not know the victims of the robbery or that part of the cash stolen had any connection to business, i.e., commerce. See United States v. Burns, No. 24-1265-CR, Pro Se Brief, Doc. No. 27.3, at 1-4 (2d Cir. Oct. 23, 2024). Petitioner argued, without such proof, he could not be found guilty of Hobbs Act robbery. See id.

In an April 14, 2025 summary order, the Second Circuit rejected Petitioner's counseled and pro se arguments and affirmed his Judgment of conviction. See United States v. Burns, No. 24-1265-CR, 2025 WL 1099558 (2d Cir. Apr. 14, 2025).[4] As to counsel's Barrett-based argument, the Appellate Court stated its ruling in Barrett "reaffirmed that substantive Hobbs Act robbery remains a crime of violence under § 924(c) after specifically considering and rejecting the same arguments that [Petitioner] advances—that Hobbs Act robbery could be committed by threatening harm to oneself or by threatening nonphysical injury to intangible property." Id. at *1. Since Petitioner's case did not present a reason to question the validity of Barrett's holding, the Circuit Court affirmed Petitioner's Section 924(c) conviction. See id.

---

[4] See also June 5, 2025 Mandate, found in the Case Docket at ECF No. 137.

12

As to Petitioner's lack-of-intent argument, the Circuit Court found it presented two questions, one of law and one of fact; the question of law was "whether the Hobbs Act requires specific intent to affect interstate commerce; and, the question of fact was "whether there was sufficient basis in the record to find an effect on interstate commerce". Id. Under de novo review, the Circuit Court addressed the question of law, holding "the Hobbs Act does not require proof that a defendant specifically intended to affect interstate commerce." Id. at *1-2. Instead, it suffices that the conduct, i.e., the robbery, "had that natural effect". Id. at *2 (citation omitted). And, in this instance, Petitioner's "conduct had at least a de minimis effect on interstate commerce, which is enough to satisfy the Hobbs Act's jurisdictional element." Id. (citation omitted). Then, under abuse-of-discretion review, the Circuit Court addressed the question of fact, holding the Government's proffer during the plea colloquy, and Petitioner's Rule 11 allocution, together with his signed plea form—which asserted he "knowingly and intentionally obstructed, delayed and affected commerce, and the movement of articles and commodities in commerce by robbery, specifically, the robbery of payroll funds" from John Doe--demonstrated a sufficient factual basis for this Court to determine Petitioner's robbery "affected interstate commerce, satisfying the jurisdictional element of the Hobbs Act."

13

Id. (citation omitted).  Hence, the Judgment against Petitioner was affirmed.  See id.

After Petitioner's petition for a writ of certiorari were denied, the instant Petition timely followed.

DISCUSSION

I.   Applicable Law

A.   The Section 2255 Standard Generally

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  Harrington v. Richter, 562 U.S. 86, 91 (2011).  To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018).  Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013

14

WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." (internal quotation marks omitted)). Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence. See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further citation

omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

B.    Ineffective-Assistance-of-Counsel Claims

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id.

Herring v. United States, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025); see also Cabral v. United States, No. 12-CR-0336, 2022 WL 307809, at *6 (E.D.N.Y. Feb. 2, 2022) (stating, "to prevail on his ineffective assistance of counsel claim, [petitioner] must '(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,'' and (2) ''affirmatively prove prejudice' arising from counsel's allegedly deficient representation'" (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005); further citation omitted)). As to the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the

16

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). In that vein, a petitioner is required to show "[t]he likelihood of a different result [was] substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (internal quotation marks omitted). And, "[i]n assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

Continuing,

> [i]n the specific context of guilty pleas, Strickland's prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. One way to satisfy the "prejudice" requirement is to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see also Kovacs v. United States, 744 F.3d 44, 51-52 (2d Cir. 2014) (discussing various ways that prejudice may be shown in the guilty plea context, including a forgone decision to proceed to trial or a more advantageous plea offer). In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. See

17

> Missouri v. Frye, 566 U.S. 134, 147 (2012); see also Lafler v. Cooper, 566 U.S. 156, 174 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). Thus, with respect to plea bargaining, a defendant must show that "the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163.

United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at *14 (E.D.N.Y. Aug. 1, 2024). The Derounian Court also noted, as to a petitioner's purported insistence on proceeding to trial, a "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id. at *14 n.17 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). And, of significance, the Second Circuit "requires some objective evidence other than [petitioner's] assertions to establish prejudice." Id. (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); further citation omitted).

"Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test." Velez v. United States, No. 05-CV-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court need not "address both components

18

of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")); see also Derounian, 2024 WL 3623522, at *12 ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong." (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)).

C.   Consideration of Petitioner's *Pro Se* Status

"When a defendant attacking his . . . sentence is proceeding pro se, the court must 'read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims.'"   United States v. Williams, No. 20-CR-0404, 2025 WL 660213, at *4 (E.D.N.Y. Feb. 28, 2025) (quoting United States v. Parisi, 529 F.3d 134, 139 (2d Cir. 2008); further citation omitted).   Hence, since Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'"   Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'"   Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).   Furthermore, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district

court] must dismiss the [habeas] motion." Seabrook v. United States, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

## II. Application

### A. The Petition

#### 1. Petitioner's Position

In seeking to have his conviction and sentence vacated, Petitioner asserts he is actually innocent, this Court lacks subject matter jurisdiction, and the cumulative effect of his counsel's errors warrant relief. (See Support Memo at 16.) Petitioner raises three corresponding bases for habeas relief: (a) actual innocence of Hobbs Act robbery (hereafter, the "Innocence Claim") (see "Ground One", Petition at 5); (b) ineffective assistance of counsel (hereafter, the "Ineffective Assistance Claims") (see "Ground Two", Petition at 6-7; "Ground Three", Petition at 8-9); and (c) the Court's lack of subject matter jurisdiction (hereafter, the "Jurisdictional Claim") ("Ground Four", Petition at 9). Petitioner supports his Claims with a Support Memo and four exhibits, which are email exchanges with his counsel. (See Support Memo; Exs. A-D, attached to Support Memo.) He has not submitted an affidavit supporting his Petition; however, in his accompanying Certificate of Service, Petitioner states, in relevant part:

20

> I, Tashwan Burns, hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §1746, that the foregoing Memorandum of Law in Support of Petitioner's Motion to Vacate, Set Aside, Or Correct His Sentence pursuant to 28 U.S.C. §2255 was constructed with the most accurate recollection of facts and to the best of my ability.

(See Cert. of Serv., ECF No. 140 at ECF p.30, attached to Support Memo.)

As to the Innocence Claim:  Relying upon his PSR (see Support Memo at 6-7), Petitioner contends his conduct does not constitute a federal crime, but was "a purely personal robbery involving personal possession of cash." (See id. at 4-5; see also id. at 13.)  Hence, he is innocent of Hobbs Act robbery. (See id. at 13.)  This Claim is intertwined with Petitioner's Jurisdictional Claim. (See id. at 4-7.)

The crux of Petitioner's position is, because he was unaware of any nexus the cash he stole had to interstate commerce, his robbing John Doe could not be considered Hobbs Act robbery. Without any citation, Petitioner asserts, "[c]ourts have consistently held that Hobbs Act does not extend to personal robberies merely because a victim owns or is associated with a business engaged in interstate commerce." (Id. at 6.)  He also baldly argues, "[e]ven assuming arguendo that some portion of the money originally came from business proceeds, once the cash is removed from the business environment and carried as personal

pocket money, it no longer retains a commercial character." (Id.)
Petitioner would have the Court discount the Government's proffer
at the change-of-plea hearing that John Doe would testify that
some of the cash Petitioner stole from Doe was designated for
payroll in one of Doe's businesses, thereby satisfying the
interstate commerce (i.e., jurisdictional) element of the charged
crime, maintaining that proffer was a "post hoc narrative". (See
id. at 5, 7.)

As to the Ineffective Assistance Claims: Regarding
defense counsel's performance during the trial stage, Petitioner
maintains counsel did not address the alleged jurisdictional
defect prior to trial even though Petitioner brought it to
counsel's attention. (See Support Memo at 8.) More specifically,
acknowledging his jurisdictional challenge was premature,
Petitioner would nonetheless fault his counsel for abandoning said
challenge since he did not renew it or preserve it. (See id. at
9.) Further, Petitioner argues the abandonment of the supposed
jurisdictional defect cannot be viewed as a strategic decision.
(See id.)

Continuing, Petitioner argues defense counsel coerced
Petitioner into pleading guilty despite Petitioner's concerns that
there was no jurisdiction to establish Hobbs Act robbery. (See
id. at 13-15.) In particular, he relies upon an email from defense
counsel, in which counsel relays the Government's position

22

regarding its plea offer, as evidence of the supposed coercion. (See id. at 14-15 (quoting Feb. 6, 2023 email, Ex. C, attached to Support Memo).)

Regarding defense counsel's appellate representation, which Petition asserts was constitutionally defective, Petitioner continues to press his jurisdictional challenge. (See Support Memo at 10-11.) He contends counsel refused to assert the supposed jurisdictional-deficiency issue and, instead, pursued the weaker argument that completed Hobbs Act robbery was not a crime of violence, a claim already foreclosed by Second Circuit precedent. (See id.) According to Petitioner, that left him to raise the jurisdictional issue on his own. (See id. at 10.)

As to the Jurisdictional Claim:

In addition to raising the jurisdictional issue in the context of his Innocence Claim and Ineffective Assistance Claims, Petitioner also argues he suffered prejudice given this Court's supposed lack of jurisdiction. (See id. at 11-12.) In a conclusory manner, Petitioner asserts: "Prejudice is not speculative, it is certain", baldly arguing "[h]ad counsel litigated the commerce element":

> Federal jurisdiction would have failed[;]
> The Hobbs Act charged would have been dismissed[;]
> The conviction could not lawfully stand[;]
> The federal court would have lacked statutory authority[; and]

23

> The prosecution would have been barred as a matter of law.

(Id. at 11.)

Finally, the Court observes, in his Support Memo, Petitioner invokes the cumulative error doctrine in support of his Petition. (See Support Memo at 15-16.)  In list form, Petitioner regurgitates his arguments advanced in support of his Petition. (See id.)

### 2.   The Government's Position

Generally, the Government argues:

> The "[d]efendant is far from the first person to seek to unwind his voluntary guilty pleas as the result of buyer's remorse. But that is not a ground for habeas relief." Mora v. Unites states, 21-CR-0090 (BMC), 2024 WL 2111546, at *3 (E.D.N.Y. May 10, 2024); see Yick Man Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010) (acknowledging ineffective assistance of counsel claims are frequently the result of "buyer's remorse" and "[d]ecisions by criminal defense counsel are often choices among bad alternatives").

(Opp'n at 14-15.)  As such, the Government contends the Petition should be denied. (See id. at 15.)

Addressing Petitioner's Innocence Claim:[5]   The Government would have the Court reject this Claim since Petitioner

---

[5]   The Court observes:  Similar to Petitioner's intermingled presentation of his Claims, incorporated within its arguments against Petitioner's Innocence Claim, the Government raises related arguments in opposition to Petitioner's Jurisdictional Claim.  Therefore, there is no separate "Addressing Petitioner's

24

already raised it prior to pleading guilty, and the Court did not accept it, finding the allegations in the Superseding Indictment regarding the interstate commerce element of the Hobbs Act counts, i.e., the jurisdictional nexus, sufficient to state a claim at that stage of the litigation. (See Opp'n 8-9 (citing September 2023 M&O).) Because the opportunity to test the allegations would have come at trial, but Petitioner "elected not to proceed to trial and instead pled guilty to Counts Two and Three", and prior to Petitioner's change-of-plea, the Government proffered evidence establishing the connection between the stolen cash and interstate commerce, the record "provided a factual basis for the Court to legally conclude during the plea hearing that [Petitioner's] conduct had some, even if minimal, effect on interstate or foreign commerce." (Id. at 9.) Moreover, the Government's proffer was conveyed to defense counsel before the change-of-plea hearing, and defense counsel shared the conveyance of that information with Petitioner. (See id. at 10 (citing Carman. Aff., ECF No. 143-1, at ¶5, attached to Opp'n.) Further, Petitioner's claim of actual innocence is foreclosed by the Second Circuit's summary order holding Petitioner's "conduct had at least a de minimis effect on interstate commerce, which is enough to satisfy the Hobbs Act's

---

Jurisdictional Claim" subpart to "The Government's Position" subsection.

25

jurisdictional element." (Id. (quoting Burns, 2025 WL 1099558, at *2).)

Addressing Petitioner's Ineffective Assistance Claims:[6] First, as to Petitioner's claim of coercion, the Government maintains it fails given the colloquy between the Court and Petitioner at the change-of-plea hearing. (See Opp'n at 10.) Among other things, the Court confirmed with Petitioner his understanding of the rights he would be foregoing by pleading guilty, including having the Government prove Petitioner's guilt as "to each and every element of the crimes in the indictment." (Id. (quoting Plea Hr'g Tr. at 4).) Furthermore, the completed Standard Plea Form confirmed, inter alia, Petitioner's: "understanding of the rights he would be waiving, including his right to have counsel 'cross-examine [witnesses for the government] and object to evidence offered by the Government and to offer evidence on [his] behalf" (id. (quoting Standard Plea Form, ¶¶ 20, 24)); and, he was "making the plea of guilty voluntarily and of [his] own free will" and "no one had 'threatened or forced [him] to plead guilty'" (id. at 10-11 (quoting Form ¶¶ 47-48)). The Government contends any arguments Petitioner "did

---

[6]   Mirroring Petitioner's presentation of his Ineffective Assistance Claims, which include related arguments in support of his Jurisdictional Claim, the Government's response in opposition to the Ineffective Assistance Claims, likewise, incorporate arguments in opposition to Petitioner's Jurisdictional Claim arguments. (See supra note 5.)

not understand the consequences of his guilty plea, or that defense counsel coerced him into making it, are not credible." (Id. at 11.) Moreover, Petitioner "has failed to explain how defense counsel otherwise coerced him into pleading guilty." And, Petitioner's reliance on email exchanges with defense counsel, i.e., Exhibits C & D, is unavailing to establish his claim of coercion. (See id. (citing cases for the proposition a habeas petitioner must offer "objective evidence" to establish prejudice caused by counsel's representation).) Finally, Petitioner's delineated list of defense counsel's alleged failures is unavailing since they are "based on [Petitioner's] misguided assumption that evidence that the robbery of money intended for payroll cannot meet the interstate commerce element of Hobbs Act robbery, and they contradict defense counsel's sworn affidavit that he and [Petitioner] 'had an extraordinarily high level of communication throughout the entirety' of the case, including making sure [Petitioner] 'was up to date on every development.'" (Id. at 12 (quoting Carman Aff. ¶6).)

Second, regarding Petitioner's remaining claims of ineffective assistance, the Government argues they are without merit. According to the Government, Petitioner's claim related to the supposed "jurisdictional defect" is unavailing because, contrary to Petitioner's claim, defense counsel did not abandon it, but "supported [Petitioner's] challenge of this element, even

27

when it was _more_ reasonable not to do so." (Opp'n at 12; _see also id._ at 13 (asserting "defense counsel in fact adopted [Petitioner's] challenge, despite his prior legal advice that such motion was premature—as this Court found").) And, Petitioner's reliance upon a series of email exchanges fails to prove otherwise. (_See id._ at 12-13 (citing and quoting Exs. A & B).) Indeed, both Exhibit B and defense counsel's affidavit demonstrate defense counsel accurately advised Petitioner that the proper time to challenge whether the effect-on-interstate-commerce element, _i.e._, the jurisdictional element, of Hobbs Act robbery was established was after the Government had presented its evidence at trial. (_See id._ at 13 (quoting and citing Ex. B; citing Carman Aff.).) Furthermore, Petitioner's "own decision to accept the [G]overnment's plea offer, and his admission of committing Hobbs Act robbery during his plea hearing, precluded defense counsel from further litigating this element." (_Id._) Therefore, Petitioner is unable to establish the deficient performance prong of _Strickland_. (_See id._ at 13.)

Similarly, Petitioner cannot satisfy the prejudice prong of _Strickland_ because there is no evidence defense counsel's performance caused Petitioner prejudice. (_See id._ at 14.) The Government argues Petitioner is unable to show, if he went to trial, that the outcome would be different or, if he went to trial, that his arguments would succeed if raised on appeal, "especially

28

when the Second Circuit already found the facts during the change-of-plea hearing to be sufficient to meet the elements of Hobbs Act robbery." (Id. (citation omitted).) Further, the Government asserts, other than speculating, Petitioner cannot establish proceeding to trial—rather than entering a guilty plea--would have resulted in a lower sentence. (See id.) And, in any event, "given that there were no errors by defense counsel, a consideration of [Petitioner's] claims cumulatively does not change the analysis." (Id.)

In support of its Opposition, the Government submits an affidavit from Petitioner's defense counsel, John F. Carman. (See Carman Aff.) Under penalty of perjury, Attorney Carman averred, inter alia:

a. As to Petitioner's Innocence Claim: Petitioner had been "identified by witnesses who recognized very specific tattoo art on his body"; he discussed with Petitioner the Government's "intent to introduce testimony from one robbery victim who was the owner of a night club" and who, it was "understood, would testify that he was . . . present with [Petitioner] earlier in the evening at a nightclub and . . . possessed a quantity of cash that was intended to be used for payroll" (id. ¶5);

b. As to the claim of coercion (i.e, Ground Three): (i) he and Petitioner "had an extraordinarily high level

29

of communication" throughout the case, with Petitioner being "an active and effective communicator"; (ii) keeping Petitioner "current on the [G]overnment's plea-bargaining posture" and "up-to-date on every development in the negotiations"; and (iii) never hearing from Petitioner "that he felt [Attorney Carman] was pressuring him in any way" (id. ¶6); and

      c.  As to Petitioner's appeal (i.e., part of Ground Two): the theory "that the Hobbs Act robbery was not a crime of violence" was perused "in light of what had been a split in the Circuit Court decisions at that time", as well as he facilitated the filing of Petitioner's pro se appellate brief (see id. ¶7).

      Thus, summarily, the Government puts forth two overarching reasons habeas relief is not warranted in this instance:

> First, [Petitioner]'s argument that his conduct did not meet the interstate commerce element of Hobbs Act robbery and therefore this Court lacked jurisdiction to accept his guilty plea fails on the merits, just as it did when it was previously addressed on appeal by the Second Circuit. Second, as to [Petitioner]'s claim of ineffective assistance of counsel, [Petitioner] has not shown that his counsel coerced him to plead guilty or engaged in any deficient performance, nor has he shown any prejudice that he suffered before this Court or during his appeal. For these reasons, the Petition should be denied without a hearing.

(Opp'n at 1.)  The Court agrees, as elucidated herein.

30

B.   The Court's Ruling

1.   No Evidentiary Hearing Will Be Held

"[T]he filing of a motion pursuant to Section 2255 does not automatically entitle the movant to a hearing; that statutory provision does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez, 722 F.3d at 130 (quoting Machibroda v. United States, 368 U.S. 487, 495 . . . (1962)).  A hearing is necessary only where the petition "set[s] forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief."  Id. at 131.

Sainfil v. United States, No. 16-CR-0652, -- F. Supp.3d --, 2026 WL 1481079, at *23 (E.D.N.Y. May 27, 2026).

Here, in its discretion, the Court has determined a full-blown evidentiary hearing on the Petition is not necessary in this instance; on the record presented, Petitioner has not made out a prima facie case that he is entitled to habeas relief.  See generally Puglisi, 586 F.3d 209; see also 28 U.S.C. § 2255(b); Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006) (instructing a district court "has discretion to determine if a testimonial hearing will be conducted"); Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (same).  To begin, Petitioner has not supported his Claims with an affidavit.  See, e.g., Puglisi, 586 F.3d at 215-17; see also Perevoznikov v. United States, No. 20-CR-0415, 2025 WL 916883, at *4 (E.D.N.Y. Mar. 25, 2025) ("To

31

warrant a hearing, 'the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief.'" (quoting Gonzalez, 722 F.3d at 131)). Even construing Petitioner's Support Memo as his affidavit, which he contends to have signed under penalty of perjury, it does not raise detailed and controverted issues of fact.  (See Support Memo, in toto); see also Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (instructing Section 2255 "does not automatically entitle the movant to a hearing . . . where the allegations are 'vague, conclusory, or palpably incredible'" (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).  The Court observes Petitioner does not aver the facts in his Support Memo are "true and correct", see 28 U.S.C. § 1746, but that they are "construed with the most accurate recollection . . . to the best of [his] ability."  (Cert. of Serv.)  While the Court does not doubt Petitioner's representation that he used his best ability to recall the facts, it also gives the Court pause regarding their veracity, especially when Petitioner carries the burden of proving he is entitled to habeas relief.  See, e.g., Negron, 520 F. Supp. 3d at 301.  Nonetheless, even assuming their truthfulness, because Petitioner's assertions within the Support Memo are bald, conclusory, and/or vague, they do not raise detailed and controverted issues of fact requiring a hearing for resolution.

32

(See, e.g., Reply at 10 (baldly asserting, "Mr. Burns disputes counsel's version of events")．) Further, Petitioner's exhibited email exchanges with Attorney Carman fail to support his Claims; instead, they demonstrate Attorney Carman was communicative with Petitioner, responding promptly to his questions and concerns. (See Exs. A-D.) At bottom, viewed liberally, the email exchanges between Petitioner and Attorney Carman also fail to provide detailed and controverted issues of fact warranting a hearing. See, e.g., Puglisi, 586 F.3d at 213; Perevoznikov, 2025 WL 916883, at *4.

"Moreover, a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Puglisi, 586 F.3d at 214 (collecting cases). Here, as the Court which presided over Petitioner's change-of-plea hearing and sentencing, this Court is well-versed with the underlying proceedings; what transpired in said proceedings controvert the assertions Petitioner now makes. See, e.g., id. at 215. In such an instance, where it is apparent a petitioner has not presented a colorable basis for relief and the record conclusively shows the petitioner is not entitled to habeas relief, a court may dismiss the habeas petition without an evidentiary hearing. Cf. id. at 213-14 ("[W]hen the judge that tried the underlying proceedings also presides over the Section

33

2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner."); see also Seabrook, 2023 WL 7489961, at *2 (affirming dismissal of habeas petition without hearing where petition was without merit). Accordingly, given its review of the Petition and the record, with which it is well-familiar, this Court declines to hold a full-blown evidentiary hearing and proceeds to rule upon the Petition.

> 2. Petitioner's Claims are Unavailing

Having carefully reviewing Petitioner's Support Memo and Reply, the Court finds Petitioner has continuously interspersed his jurisdictional challenges throughout his arguments in support of the four identified Grounds he raised in his Petition. Given Petitioner's presentation of his Claims, and similar to the Government, the Court views said Claims as falling under two general categories: Claims related to the Court's purported lack of jurisdiction (i.e., the Innocence Claim and the Jurisdictional Claim), and Claims regarding complaints of ineffective assistance of counsel (i.e., the Ineffective Assistance Claims). The Court's ruling addressed Petitioner's Claims under these two categories.

> a. The Innocence and Jurisdictional Claims

"The Supreme Court has yet to recognize the existence of a freestanding actual innocence claim." DiTomasso v. United States, Nos. 21-CV-7704, 14-CR-0160, 2022 WL 3083441, *3 (S.D.N.Y.

34

Aug. 3, 2022).  "Similarly, neither the Second Circuit nor any other circuit has held that a claim of actual innocence, standing alone, is a basis for habeas relief."  Id. (collecting cases).) Instead, a claim of actual innocence may be used as a gateway to avoid a procedural bar.  See id.  Nonetheless, even if proven, a freestanding actual innocence claim does not establish a right to habeas relief.  See id.

Assuming, arguendo, actual innocence was a basis for habeas relief, Petitioner's claim would fail.  As the DiTomasso Court explained:

> Drawing from cases discussing actual innocence in the context of using it as a gateway to avoid a procedural bar, to establish actual innocence, "[the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623 (1998) (cleaned up). "This is a 'demanding' standard and 'permits review only in the extraordinary case.'" Garafola v. United States, 909 F. Supp. 2d 313, 326 (S.D.N.Y. 2012) (quoting House v. Bell, 547 U.S. 518, 538 (2006)).  To qualify for the equitable exception, "a claim of actual innocence must be both credible and compelling."  Rivas, 687 F.3d at 541 (internal quotation marks and citations omitted).  "A claim is credible when it is supported by new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial; it is compelling when the petitioner can demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt."  Cosey v. Lilley, 460 F.

35

> Supp. 3d 346, 374 (S.D.N.Y. 2020) (cleaned up).

Id.

The Court finds the instant case is not extraordinary; instead, it presents as little more than Petitioner's persistent disagreement with (and non-acceptance of) the reality that the law requires the effect-on-interstate-commerce element of Hobbs Act robbery, i.e., the jurisdictional element, to be determined by the fact-finder after the Government presents its evidence on same. (See generally September 2023 M&O at 5-6 (discussing standard for a Rule 12(b) dismissal motion and stating "the requirement of an effect on interstate commerce is itself an element of the [Hobbs Act] offense charged, and the determination of whether the jurisdictional element has been satisfied is part and parcel of the inquiry into the 'general issue' of whether the statute has been violated" (quoting United States v. Alfonso, 143 F.3d 772, 777 (2d Cir. 1998)).)  As the Government aptly characterizes it, this Petition is based upon "buyer's remorse".  (See Opp'n at 14.)

Nor is Petitioner able to meet the demanding standard of demonstrating actual innocence since his Innocence Claim is not both credible and compelling.  Said Claim is not credible because Petitioner has failed to present any new evidence to support it, and it is not compelling because, in the absence of any new evidence, he is unable to show that, more likely than not, any

36

reasonable juror would have reasonable doubt about his guilt of Hobbs Act robbery.

Moreover, to the extent Petitioner continues to challenge the Superseding Indictment regarding the jurisdictional element of Hobbs Act robbery, that is unavailing. To begin, "it is . . . well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review." United States v. Logan, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012) (collecting cases).[7] Rather,

> [a]n indictment is deemed constitutionally sufficient if "it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." De Vonish v. Keane, 19 F.3d 107, 108 (2d Cir.1994) (quotations and citations omitted). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." U.S. v. Stavroulakis, 952 F.2d 686, 693 (2d Cir.1992) (quoting United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir.1975)).

Id.

Here, in ruling upon Petitioner's Second Dismissal Motion, this Court already found said Superseding Indictment was

---

[7]  If, however, an indictment falls below basic constitutional standards, such defect may be challenged in the habeas context. See Logan, 845 F. Supp.2d at 518 (quoting Carroll v. Hoke, 695 F. Supp. 1435, 1438 (E.D.N.Y. 1988)). As this Court and the Circuit Court have ruled, that is not the case in this instance.

37

constitutionally sufficient.   (See September 2023 M&O at 9-10.)

In doing so, the Court parenthetically recognized it:

> could not "conclude based solely on the indictment and criminal complaint that as a matter of law the government [would] not be able to prove at trial that the robbery obstructed or affected interstate commerce" [because] the indictment satisfied the minimum pleading requirements set forth by the Second Circuit, and because "the requisite jurisdictional nexus for a Hobbs Act violation is a fact-based inquiry that can only be resolved after the government has put forth all of its evidence related to jurisdiction".

(Id. at 10 (citing United States v. Remire, 400 F. Supp.2d 627, 630 (S.D.N.Y. 2005)); emphasis added.)   Therefore, prior to his change-of-plea, Petitioner was informed that any challenge to the jurisdictional element of Hobbs Act robbery could not be made until after the Government presented its evidence on that issue; to make that determination before the presentation of the Government's evidence would be premature.   (See, e.g., id. at 8-9.)

However, Petitioner decided to plead guilty, which was determined to be knowing and voluntary.   (See Change-of-Plea Hr'g Tr. 14.)   As explained to Petitioner at his change-of-plea hearing, by pleading guilty, Petitioner was waiving his right to have the Government prove "beyond a reasonable doubt . . . each and every element of the crimes cited in the indictment" (see id. at 3-4); Petitioner confirmed his understanding that he was waiving those rights (see id. at 4).   And, before Petitioner entered his guilty

38

plea, the Court had the Government make its proffer of evidence, which included, inter alia, how it would prove the robbed cash affected interstate commerce, i.e., with the testimony of John Doe, the Government planned to establish the jurisdictional element of Hobbs Act. (See id. at 13-14.) Hence, based upon Petitioner's allocution regarding what transpired on September 9, 2019 during the robbery and what made him guilty of Counts Two and Three (see id. at 11-12), together with the Government's further proffer of evidence (see id. at 13-14), the Court found the record was sufficient to accept Petitioner's guilty plea on Counts Two and Three as knowing and voluntary. (See id. at 14.) Quite simply, as the Government astutely argues, this subsequent—and voluntary--trajectory of the case foreclosed Petitioner's basis for challenging whether the jurisdictional element of the Hobbs Act robbery count, Count Two, had been proven. (See Opp'n at 13 (arguing Petitioner's "own decision to accept the [G]overnment's plea offer, and his admission of committing Hobbs Act robbery during his plea hearing, precluded defense counsel from further litigating this element")); cf., e.g., United States v. White, 240 F.3d 127, 134 (2d Cir. 2001) (defendant's stipulation to a drug quantity rendered a jury finding on that issue unnecessary); United States v. Champton, 234 F.3d 106, 110 & n.3 (2d Cir. 2000) (per curiam) (same).

39

And, to the extent Petitioner now relies upon the subsequently issued PSR in support of his challenge to the jurisdictional element of Hobbs Act robbery, his reliance is misguided. The PSR was issued December 6, 2023, approximately two months after Petitioner's September 27, 2023 change-of-plea. (See Case Docket, PSR at 1; compare Sept. 27, 2023 Minute Entry, ECF No. 101; Standard Plea Form at 1 (file stamped Sept. 27, 2023).) Given the sequence of events, it was impossible for anyone to have relied upon the general statement in the PSR regarding John Doe disclosing during a media interview "that he owned three restaurants in New York City which generated cash profits" to establish the jurisdictional element of Hobbs Act robbery at the time Petitioner pled guilty to Count Two, the Hobbs Act robbery count.

In any event, the Mandate Rule forecloses Petitioner's Innocence and Jurisdictional Claims. See Yick Man Mui, 614 F.3d at 53 ("The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."); see also Fernandez v. United States, 608 U.S. --, 146 S. Ct. 1292, 1300 (2026) ("Claims that have already been raised and rejected on direct review typically cannot be relitigated in § 2255 motions."); United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) ("It is well established

that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation marks and citations omitted)). The bases for those Claims were addressed by the Circuit Court when, upon appeal, it affirmed Petitioner's judgment of conviction. See Burns, 2025 WL 1099558. Relevant to Petitioner's Innocence and Jurisdictional Claims, the Circuit Court held, as a matter of law, "Hobbs Act does not require proof that a defendant specifically intended to affect interstate commerce" and "the record demonstrate[d] [Petitioner's] conduct had at least a de minimis effect on interstate commerce, which is enough to satisfy the Hobbs Act's jurisdictional element." Id. at *2. Further, as a matter of fact, highlighting (i) the Government's proffer of evidence, (ii) Petitioner's guilty plea to Counts Two and Three, and (iii) Petitioner's having "signed a plea form asserting that he 'knowingly and intentionally obstructed, delayed and affect commerce, and the movement of articles and commodities in commerce by robbery, specifically, the robbery of payroll funds' from the victim", the Circuit Court held this "Court had a sufficient factual basis to determine that [Petitioner's] robbery affected interstate commerce, satisfying the jurisdictional element of the Hobbs Act." Id. (quoting Standard Plea Form). Hence, at bottom, neither Petitioner's Innocence Claim nor Jurisdictional Claim is grounds for granting habeas relief.

41

b.   The Ineffective Assistance Claims

As a general matter, given Petitioner's Ineffective Assistance Claims are anchored to his Jurisdictional Claim, these Claims, too, are foreclosed by the Mandate Rule since, in affirming his Judgment of conviction, the Second Circuit rejected the Jurisdictional Claim.  In doing so, at a minimum, the Circuit Court implicitly resolved the arguments Petitioner advances here.  See, e.g., Yick Man Mui, 614 F.3d at 53.

Moreover, as to his Ineffective Assistance Claims, Petitioner is unable to satisfy the requisite prejudice prong. That is because, given the specific facts of this case, Petitioner cannot convince the Court that a decision to have rejected the Plea Agreement would have been rational under the circumstances. See Derouian, 2024 WL 3623522, at *14 and n.17.  Indeed, under the facts of this case, Petitioner's vague, bald, hindsight-based claims that, but for Attorney Carman's allegedly defective advice, Petitioner would have insisted on going to trial (see, e.g., Support Memo at 11, 15; Reply at 5, 12-13), defy credulity. Rather, as the Government argues, had Petitioner "decided not to accept the [G]overnment's plea offer and proceed to trial, there is no evidence that the outcome would be different."  (Opp'n at 14.)  The Court agrees; Petitioner has not offered any objective

42

evidence supporting his claim.[8]  See Michel v. United States, No. 18-CR-0664, 2026 WL 1398659, at *6 (E.D.N.Y. Say 19, 2026) (stating Second Circuit "requires some objective evidence other than [petitioner's] assertions to establish prejudice" (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); further citation omitted)).  To the extent Petitioner relies upon email exchanges he had with Attorney Carman to demonstrate a reasonable probability of a different outcome but for Attorney Carman's advice (see Exs. A-D), the Court rejects said reliance; an objective reading of those email exchanges shows, inter alia, Attorney Carman: acknowledging Petitioner's inquiries together with committing to further addressing those inquires during later-scheduled phone calls; in the meantime, providing general, accurate advice; relaying information received from the Government regarding its stance on plea negotiations; and, providing his professional opinion regarding the outcome of Petitioner's dismissal motion and different sentencing scenarios Petitioner may face.  Petitioner's displeasure or disagreement with the advice Attorney Carman

---

[8]  Further, it cannot be seriously doubted that, if Petitioner had gone to trial, the Government would have offered the testimony of John Doe, the robbery victim, to prove the jurisdictional element of Hobbs Act robbery.  Petitioner has not presented any objective evidence which would call this presumption into doubt.  See generally United States v. Bush, No. 19-CR-0378, 2026 WL 263006, at *6 (E.D.N.Y. Feb. 2, 2026) (collecting cases of petitioners failing to show prejudice where, if they had rejected plea offers, it was unlikely the Government would have failed to prove their cases).

43

provided via those emails does not morph said advice into evidence Petitioner was prejudiced by it.  (See, e.g., Opp'n at 11 (arguing Petitioner "was interested in a plea but was dissatisfied by the [G]overnment's plea offer to Counts Two and Three" (citing Ex. D), and "[d]efense counsel explained that the [G]overnment had not extended any other offers, other than the possibility of cooperation, which [Petitioner] had already rejected" (citing Ex. D)).)  This conclusion is buttress by consideration of the Circuit Court's holding in its Summary Order that mere "de minimis effect on interstate commerce . . . is enough to satisfy the Hobbs Act's jurisdictional element" and Petitioner's conduct had that effect. Burns, 2025 WL 1099558, at *2.  Furthermore, given the evidence the Government had against Petitioner--e.g., witness testimony from John Doe; testimony of cooperating witnesses; a surveillance video capturing the robbery and Petitioner's unique tattoo art, which was used to identify Petitioner (see Change-of-Plea Hr'g Tr. at 13-14)--Petitioner's contention he would have fared better if he proceeded to trial is patently unavailing.  Given the instant record, Petitioner cannot show it is reasonably probable that, but for Attorney Carman's advice, going to trial would have resulted in a different outcome.

Continuing, the Court agrees with the Government that Petitioner is unable to show a reasonable probability he would have received a lower sentence if he had proceeded to trial.  (See

44

Opp'n at 14.)  As the Government correctly observes, by pleading guilty, Petitioner benefited from the Government's promise it would not seek an upward departure under the Sentencing Guidelines, as well as a three-level reduction in his offense level for acceptance of responsibility.  (See Opp'n at 14; see also Sent'g Hr'g Tr. 11 (agreeing to a Criminal History Category of IV notwithstanding Probation Department's determination said Category should be V).)   Moreover, Petitioner "offers no persuasive arguments to show that he would have received a lower sentence if he had proceeded to trial."  Bush, 2026 WL 263006, at *6 (stating, further, "purely speculative arguments about the impact of an error do not establish prejudice" (citation modified)).  Rather, "given the benefits that he received by pleading guilty, including the dismissal of [an]other count[]in the indictment, . . . , the three-level reduction for acceptance of responsibility, and the fact [Attorney Carman] vigorously advocated for a below-Guidelines sentence despite the stipulated-to range, [Petitioner] cannot show prejudice from his attorney's" advice.  Id. (footnotes omitted); (see also Def.'s Sent'g Memo, ECF No. 129 (arguing, e.g., for a sentence of as little as one day on the Hobbs Act robbery count (Count Two), to counter the sever sentence imposed by the Texas district court for a separate bank fraud conviction).)   Thus, "Petitioner cannot show prejudice because [he] received a more favorable sentence than if he had proceeded to trial and been

convicted on the charges in the [Superseding I]ndictment." Fifield v. Hunt, No. 06-CV-6235, 2009 WL 4730322, at *5 (W.D.N.Y. Dec. 4, 2009) (cited in Bush).

"To resolve [Petitioner]'s habeas claim, the Court need only consider the second prong of Strickland: whether [Petitioner] has shown a 'reasonable probability' of prejudice, i.e., that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bush, 2026 WL 263006, at *5 (stating further, "the court may consider the prejudice prong first if it is 'easier to dispose of [petitioner's] ineffectiveness claim'" (quoting Strickland; citation modified)). Finding Petitioner is unable to establish that, but for Attorney Carman's advice, the result of his case would be different and, thereby, fails to establish the Strickland prejudice prong, the Court need not continue to consider Petitioner's Petition. Nevertheless, the Court briefly addresses the performance prong of the Strickland test as it applies to Petitioner's Ineffective Assistance Claims; at bottom, Petitioner cannot establish Attorney Carman's performance was constitutionally deficient.[9]

---

[9] Petitioner also argues the cumulative effect of several alleged failures of Attorney Carman warrant habeas relief. (See Support Memo at 15-16.) His contention is unavailing. Other than delineating purported "errors" in a proverbial "laundry list", these claimed errors are devoid of any details—specific or otherwise—supporting their existence; in their bare form, they fail to raise any colorable legal claims. (See id.) Given their lack of substantiation, Petitioner offers little for the Court to

46

i.    The Coercion Challenge

Petitioner's claim of coercion is belied by the record. The Government accurately summarized the relevant facts supporting this conclusion.  (See Opp'n at 10-11 (citing Change-of-Plea Hr'g Tr.).)  In sum, at the change-of-plea hearing, the Court conducted a colloquy with Petitioner during which it: informed Petitioner that by pleading guilty, he would be giving up his various rights; stated the Government would have to prove Petitioner's guilty as "to each and every element of the crimes in the indictment"; and confirmed several facts, to wit: Petitioner had had an opportunity to speak and review with Attorney Carman all his rights and penalties if his plea was accepted; Petitioner had been provided with the discovery in the case and told by Attorney Carman of his possible defenses; and, Petitioner agreed to the plea agreement. The Court also inquired whether Petitioner was satisfied with

_____

consider as to these amorphous errors.  See United States v. Wu, Nos. 02-CR-0271, 09-CV-5612, 2009 WL 3053741, at *4 n.4 (S.D.N.Y. Sept.17, 2009) ("Since none of [petitioner's] claims has the slightest merit, his [cumulative impact] claim . . . adds nothing to his argument.").

Moreover, "Petitioner's argument that the cumulative effect of [Attorney Carman's] alleged errors amounts to the denial of effective counsel is wholly without merit.  The Court has dispensed with all of Petitioner's [other] individual claims, finding them to lack basis in law and in fact.  Considering Petitioner's claims cumulatively does not change this analysis."  Mavashev v. United States, No. 11-CV-3724, 2015 WL 1508313, at *16 (E.D.N.Y. Mar. 31, 2015).

Attorney Carman's representation; Petitioner stated he was.  (See supra at 7.)

Petitioner's colloquy with the Court was consistent with his responses and representations made in the Court's Standard Plea Form, which Petitioner and defense counsel completed before the commencement of the change-of-plea hearing.  (See Standard Plea Form, ECF No. 102; see also supra at 6 (summarizing Petitioner's representations contained in Standard Plea Form).) Pursuant to said Plea Form, Petitioner confirmed:  his understanding of the rights he would be waiving, including his right to have counsel "cross-examine [the Government's witnesses] and object to evidence offered by the Government and to offer evidence on [his] behalf" (id. at ¶¶20, 24); he was "making the plea of guilty voluntarily and of [his] own free will" (id. at ¶47); no one had "threatened or forced [Petitioner] to plead guilty" (id. at ¶47); and, Petitioner was charged with "the robbery of payroll funds from John Doe", which affected commerce (id. at ¶27).  (See also supra at 6.)  Of relevance, at the change-of-plea hearing, the Court verified with Petitioner he did not want to make any changes to the Plea Form.  (See Change-of-Plea Hr'g Tr. 11.)

Petitioner's present contrary coercion claim is unavailing.  Petitioner's "in-court statements are afforded a 'strong presumption of verity,'" Delutro v. United States, No.

48

11-CV-2755, 2014 WL 4639198, at *8 (E.D.N.Y. Sept. 16, 2014) (quoting Gonzalez, 722 F.3d at 130-31), "and create a 'formidable barrier' to habeas relief." Id. (quoting Blackledge, 431 U.S. at 74). Hence, weighing Petitioner's sworn attestations that he was not coerced or forced to enter into the Plea Agreement, coupled with his averment he was satisfied with his defense counsel's services, against his current bald assertion of coercion to the contrary (see, e.g., Reply at 12), the Court finds Petitioner's coercion challenge meritless. See, e.g., Gist v. United States, No. 16-CR-0656, 2021 WL 3774289, at *25 (S.D.N.Y. Aug. 24, 2021) ("The Supreme Court has long held that '[s]olemn declarations in open court carry a strong presumption of verity. T[hus, t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .'" (quoting Blackledge, 431 U.S. at 74 (citing Machibroda v. United States, 368 U.S. 487, 495-96 (1962))); Logan, 845 F. Supp.2d at 512-13 (rejecting petitioner's claim of coercion where petitioner's "statements during his guilty plea and sentencing confirmed that no one threatened him or forced him to plead guilty") (collecting cases).

This determination comports with the Government's contention Petitioner has failed to explain how Attorney Carman's relaying the Government's plea offer equates to coercion on Attorney Carman's part. (See Opp'n at 11.) In any event, while

49

Attorney Carman's informing Petitioner of the Government's plea position "may have been disheartening, . . . it was not wrong." Goyal v. United States, Nos. 19-CR-0844, 23-CV-1516, 2025 WL 307236, at *9 (S.D.N.Y. Jan. 27, 2025) (citing United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001) (holding attorney's "blunt rendering of an honest but negative assessment of [petitioner's] chances at trial, combined with advice to enter the plea," did not "constitute improper behavior or coercion that would suffice to invalidate a plea"). And, "[a]bsent any indication that the [advice] was inaccurate, [Petitioner's] attorney's decision to advise his client to plead guilty must be accorded the presumption of reasonableness." Gonzalez v. United States, No. 12-CV-8261, 2013 WL 3305324, at *5 (S.D.N.Y. July 1, 2013). Because Petitioner has not successfully rebutted that presumption of reasonableness, his coercion challenge fails to warrant habeas relief.

ii.  The Jurisdictional-Based Challenges

In the context of habeas petitions, it is well-settled defense counsel has broad discretion to determine what motions to pursue. See United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir. 1987) ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."); Goyal, 2025 WL 307236, at *10 (stating, "counsel's decisions about what motions are worth making are not ones that a reviewing court may second-guess") (collecting cases).

50

Therefore, Petitioner's argument Attorney Carman was ineffective for not having filed a dismissal motion attacking the Superseding Indictment on the basis of lack of jurisdiction (see Support Memo at 8-9) is unpersuasive.  To begin, the record shows Attorney Carman knew such a motion was premature, as he accurately advised Petitioner.  (See Ex. B (via email, informing Petitioner "the motion pertaining to interstate commerce cannot be filed until after the government has a chance to proof [sic] the interstate nexus—which happens at trial", and "after they put the evidence on – we get to make that motion").)  Nonetheless (and, perhaps to appease his client and avoid an ineffective assistance claim such as this), prior to trial, Attorney Carman filed Petitioner's Second Dismissal Motion, accompanied by a cover letter in which Attorney Carman stated he had "reviewed the motion and discussed the issue presented with [Petitioner]" and believed Petitioner had "crafted a thoughtful attack on the interstate commerce aspect of the substantive and Hobbs Act conspiracy charges" in the Superseding Indictment.  (Carman Cover Ltr.); cf. Williams v. Bennett, No. 99-CV-1119, 2003 WL 21143070, at *9 (E.D.N.Y. Jan. 3, 2003) ("Trial counsel was not obligated to adopt [petitioner's] futile pro se motion, and his decision not to do so provides no basis for petitioner's [habeas] claim").  However, the Court's ruling proved Attorney Carman's initial advice correct:  Petitioner's jurisdictional-based argument was premature.  (See September 2023

51

M&O at 10.)  Hence, the record bears out Attorney Carman's failure to initiate the jurisdictional-based Second Dismissal Motion does not establish his representation was constitutionally ineffective because such a motion was futile.

Similarly, Attorney Carman was not ineffective in his assistance to Petitioner by not advancing the Hobbs Act's jurisdictional element upon appeal, as Petitioner wanted.  "The fact that counsel will not present certain issues or motions to the [appellate] court, which [Petitioner] wishes to be raised, does not render his or her representation ineffective."  Warren v. Miller, 78 F. Supp.2d 120, 134 (E.D.N.Y. 2000); see also Bennett, 2003 WL 21143070, at *9; Daniels v. Lee, No. 17-CV-7922, 2022 WL 1948524, at *14 (S.D.N.Y. June 6, 2022) ("Counsel certainly is not required to engage in the filing of futile or frivolous motions." (citing Nersesian, 824 F.2d at 1322)).  It is irrelevant Attorney Carman knew, as Petitioner argues, the issue he raised on appeal --whether completed Hobbs Act robbery was a crime of violence for purposes of Section 924(c)--was weak;[10] what matters here is that, in comparison to the Section 924(c)-related issue, Attorney Carman did not raise the Hobbs Act jurisdictional element issue because

---

[10]  As the Circuit Court recognized, in his counseled brief, "Burns acknowledges that his argument is foreclosed by this Court's decisions in United States v. McCoy, 58 F.4th 72 (2d Cir. 2023), and United States v. Barrett, 102 F.4th 60 (2d Cir. 2024), but he seeks to preserve the issue for in banc or Supreme Court review." Burns, 2025 WL 1099558, at *1.

52

he knew it was futile.  That determination and course of action fell well within the broad, constitutionally acceptable range of effective representation to which Petitioner is entitled notwithstanding Petitioner's disagreement with Attorney Carman's assessment of the comparative weight of two issues raised on appeal.  See, e.g., United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) (counsel could not have been ineffective "for failing to make a motion that would have been futile"); Whaley v. United States, No. 09-CR-0619, 2024 WL 2847141, at *11 (E.D.N.Y. June 5, 2024) ("counsel were not ineffective for failing to bring meritless motions or arguments without a reasonable chance of success, and, in any event, because any such motions were futile, Petitioner was also not prejudiced as a result by counsel's failure to pursue [them]").  Accordingly, this branch of Petitioner's jurisdictional-based challenge does not establish ineffective assistance of counsel and does not entitle Petitioner to habeas relief.

–*–*–*–

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit.  At bottom, given the record of this case, and having considered the relevant case law, the Court finds Petitioner, if not precluded by application of the Mandate Rule, does not present meritorious Innocence and Jurisdiction Claims,

53

and is otherwise unable to satisfy the applicable Stickland test as to his Ineffective Assistance Claims.  In sum, habeas relief is not warranted.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 140) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability.  See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope, and mark as "CLOSED" the corresponding civil

case, Case No. 26-CV-1742.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  July 29, 2026
        Central Islip, New York